## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____ )
                                        )
BRANCH AVE CAPITAL, LLC and             )
CHASE BUILDING ASSOCIATES               )
LIMITED PARTNERSHIP II,                 )
                                        )
   Plaintiffs,            )
                                        ) **CIVIL ACTION**
  v.                            ) **NO. 12-40140-TSH**
                                        )
                                        )
U.S. BANK NATIONAL ASSOCIATION          )
and C-III ASSET MANAGEMENT, LLC,        )
as Special Servicer and Agent to U.S. Bank )
National Association,                    )
                                        )
   Defendants.             )
_____ )


### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  (Docket No. 11)

**September 16, 2013**

**HILLMAN, D.J.**


### Background

Branch Ave Capital, LLC ("Branch") and Chase Building Associates Limited Partnership II ("Chase") (collectively "Plaintiffs") filed a Complaint against U.S. Bank National Association ("U.S. Bank") and C-III Management, LLC (C-III), as special servicer and agent to U.S. Bank (collectively "Defendants"). In the Complaint, Branch states claims against the Defendants for breach of contract (Counts I and III), breach of good faith and fair dealing (Count II), fraud in the inducement (Count IV and V), and violations of M.G.L. c. 93A (Counts VI and VII).

Additionally, Chase states claims against the Defendants for a violation of M.G.L. c. 244 §14 (Count VIII) and for a conducting a commercially unreasonable and voidable foreclosure auction (Count X). The Defendants have moved for summary judgment. This Memorandum of Decision addresses the Defendants' Motion for Summary Judgment (Docket No. 11). For the reasons set forth below, I grant that motion.

### Facts

On or about February 19, 2007 PNC Bank National loaned Chase $3,200,000. Chase executed a promissory note evidencing this loan (the "Note"), which was secured by liens and encumbrances on the property at 40-48 Front Street, Worcester, MA (the "Property"). PNC Bank National assigned the Note to Wells Fargo Bank, which assigned the Note to U.S. Bank on or about July 6, 2009.

On September 23, 2011 C-III sent a Notice of Default letter to Chase, noting that Chase had missed its installment payments for August and September 2011 and giving Chase until October 1, 2011 to cure the payment defaults. Chase did not cure the defaults by this time and as a result C-III sent an acceleration letter to Chase on October 4, 2011 explaining that Chase was in default and the loan had been accelerated. C-III later scheduled a foreclosure sale for April 18, 2012. C-III sent a notice of this sale to Chase and other persons entitled to notice by registered mail. C-III also published legal notice of this sale in the *Worcester Telegram & Gazette* on March 21, 2012, March 28, 2012 and April 4, 2012.

Before the April 18th sale, the Plaintiffs began negotiations with C-III to purchase the Note (the "Note Sale"). These continued through June and July, and as a result C-III postponed the foreclosure sale to May 9, 2012, then to May 30, 2012, then to June 27, 2012, and finally to September 7, 2012. C-III emailed Chase the date of the ultimate foreclosure sale. C-III also

retained an auction company, Daniel J. Flynn & Co., Inc. which published notices of the September 7, 2012 sale date in the *Boston Sunday Globe*, the *Boston Sunday Herald*, and the *Worcester Telegram & Gazette* on the two Sundays before the auction, a notice in the *Wall Street Journal*, and notices in the two *Banker & Tradesmen* issues printed before the auction. The auction company also sent an "email blast" about the sale to all subscribers of the NE Real Estate Journal Hot Property Alert and placed listings for the property on the commercial brokerage listing services Loopnet.com/Co-Star and EListings.com and on its own website.

Based on the aforementioned negotiations regarding the Note Sale, C-III emailed a final draft of the proposed sale agreement to Chase on August 7, 2012. The agreement contained a provision stating that the approval of the noteholder's credit committee by August 24, 2012 was a condition precedent to the noteholder's obligations under the contract. C-III sent another email on August 9, 2012 to inquire about the status of the agreement and request signatures by the end of the week (August 10, 2012). C-III did not receive any of the necessary signatures by August 10.  Branch sent an electronic copy of its signature on August 15. The Defendants received an electronic copy of the signature of Robert Depietri Jr., one guarantor of the Note, on August 16. On August 28, 2012 C-III informed Branch that the September 7 foreclosure sale would take place and that there would be no Note Sale.  The Defendants received electronic copies of the signatures of Chase and Robert Depietri Sr., the other guarantor of the Note, on August 31, 2012.

The foreclosure sale occurred on September 7, 2012. The Plaintiffs, U.S. Bank, and other interested buyers attended.  Plaintiffs maintain they attended for the purpose of bidding on the Property. After approximately five or six rounds of bidding, U.S. Bank successfully purchased the Property with a bid of $2,500,000. Plaintiffs maintain they only stopped bidding when the auctioneer requested they stop bidding and promised that C-III would assign them the winning

bid for $2,500,000 if they did so. Defendants deny this conversation took place, and C-III never assigned the bid to the Plaintiffs.

Any additional facts necessary to the Court's decision will be included in the relevant discussion.

## Discussion

### Summary Judgment Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4).

The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex*, 477 U.S. at 325). At this stage, the nonmoving party may not rest upon mere allegations or denials of the summary judgment motion, but must "set forth specific facts showing a genuine issue of material fact as to each issue he claims is disputes." *Hodgins v. General Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998). When ruling on a motion for summary judgment, the court must construe the facts in the

light most favorable to the non-moving party.  *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).

Chase's Claims Against the Defendants (Counts VIII and X)

1. Violation of M.G.L. c. 244 §14

In its complaint, Chase brings claims against the Defendants for violationing M.G.L. c. 244 §14 (Count VIII) and for conducting a commercially unreasonable and voidable foreclosure auction (Count X).  M.G.L. c. 244 §14 requires specific types of notice be given before a foreclosure sale can effectively foreclose a mortgage.[1] The statute does not require notice by public proclamation[2] for postponed sales, in fact it is silent on what subsequent notice is required if that initial sale is postponed.  *See* M.G.L. c. 244 §14; *Hammond v. JPMC Specialty Mortgage LLC,* 2011 WL 1463632, at *8 (D. Mass. Apr. 15, 2011) ("Under Massachusetts law, a mortgagee may postpone a foreclosure auction…without renewing the statutory notice requirements.").  Chase offers nothing to refute the evidence on the summary judgment record (the "record"), nor does it deny, that C-III gave the statutorily required notice for the initial foreclosure. Chase only contends that C-III provided insufficient notice of the postponed sale. The record shows that C-III complied with M.G.L. c. 244 §14, which governs only notice for the initial sale. Therefore, the Defendants' motion for summary judgment on Count VIII is granted.

2. Conducting a Commercially Unreasonable and Voidable Foreclosure Sale

Chase also claims the ultimate foreclosure auction was commercially unreasonable because the Defendants failed to give proper notice of the rescheduled auction.  Massachusetts

---

[1] "no sale…shall be effectual to foreclose a mortgage, unless, previous to such sale, notice thereof has been published once in each of three successive weeks, the first publication to be not less than twenty-one days before the day of sale, in a newspaper, if any, published in the town where the land lies or in a newspaper with general circulation in the town where the land lies and notice thereof has been sent by registered mail to the owner or owners of record of the equity of redemption as of thirty days prior to the date of sale, said notice to be mailed at least fourteen days prior to the date of sale to said owner or owners…." M.G.L. c. 244 §14.

[2] A "public proclamation" is an announcement of the postponement at the time and place of the originally scheduled sale.  *See Fitzgerald v. First Nat'l Bank of Boston,* 46 Mass.App.Ct. 98, 101 (1999).

courts have found foreclosure sales invalid for commercial unreasonableness when mortgagees have shown bad faith or a failure of diligence "of an active and conspicuous character." *Pemstein v. Stimpson*, 36 Mass.App.Ct. 283, 287 (1994).  The borrower has the burden of proving that the sale should be invalidated due to commercial unreasonableness.  *Resolution Trust Corp. v. Carr*, 13 F.3d 425, 429-40 (1st Cir. 1993); *Chartrand v. Newton Trust Co.,* 296 Mass. 317, 320 (1936).  Here, Chase contends that Defendants' failure to give proper notice of the rescheduled sale is evidence of bad faith.

There are no statutory notice requirements for rescheduled foreclosure sales.  *See* M.G.L. c. 244 §§ 11-17B (listing specific requirements for the initial sale only); *Hammond ,* 2011 WL 1463632, at *8; *Fitzgerald,* 46 Mass.App.Ct. at 100 (noting only initial auction notice must comply with statutory requirements).  Instead, the mortgagee's notice duties for postponed sales "are embraced under the general obligation to make reasonable efforts to prevent a sacrifice of the property." *Fitzgerald*, 46 Mass.App.Ct. at 100 (quoting *Marcus v. Collamore,* 168 Mass. 56, 57 (1897)).  For Chase to survive summary judgment on this claim there must be some evidence on the record indicating the Defendants, acting in bad faith, failed to meet this obligation.  *Id.*

Chase alleges C-III did not make any public proclamations of the postponed sales and therefore the foreclosure sale was commercially unreasonable due to lack of proper notice.  Massachusetts courts do not *require* notice by public proclamation.  *See Hammond ,* 2011 WL 1463632, at *8; *Stevenson v. Dana*, 166 Mass. 163, 170 (1896); *Fitzgerald*, 46 Mass.App.Ct. at 100.  Rather, public proclamations are merely one method of giving notice of a postponed foreclosure sale that may satisfy the mortgagee's obligation.  *Hammond ,* 2011 WL 1463632, at *8 ("a mortgagee *may* postpone a foreclosure auction by public proclamation without renewing the statutory notice requirements") (emphasis added); *Fitzgerald*, 46 Mass.App.Ct. at 100

(holding "a postponement of the sale *may* be announced by public proclamation to those present at the auction site" and need not be announced by additional written notice and publication) (emphasis added).  All that is required is notice sufficient to protect the mortgagor's interest under the given circumstances.  *Stevenson*, 166 Mass. 163, 170-71 (holding it was unnecessary to advertise adjournments of sale because sufficient notice was given to protect mortgagor's interest); *Marcus*, 168 Mass. at 57-58 (holding no public proclamation was necessary to validly adjourn the foreclosure sale when publications of the postponed sale were made, because duties after original sale are "less defined, and are embraced under the general obligation to make reasonable efforts to prevent a sacrifice of the property").  In some cases, public proclamations have been found insufficient to protect the mortgagor's interest.  *Clark v. Simmons*, 150 Mass. 357, 360-61 (1890) (finding notice given did not adequately protect the mortgagor's interest when a public proclamation was given at auction only the auctioneer and defendant attended).  Protecting the mortgagor's interest, not making a public proclamation, is the touchstone for adequate notice.  *Id*.

Even if the Defendants did not make any public proclamations, Chase cannot meet its burden of showing the sale was commercially unreasonable due to a lack of notice. The Defendants have put forth evidence, which Chase has not refuted, showing the Defendants acted in good faith to provide notice sufficient to protect Chase's interests. The Defendants informed Chase of the new auction date through email over a week before the sale. Moreover, the Defendants hired an auctioneer who extensively advertised the foreclosure sale in the weeks leading up to it. The breadth of this advertising went well beyond that required by M.G.L. c. 244 §14 for the initial notice.[3] The sufficiency of this notice is demonstrated by the fact that a number

---

[3] M.G.L. c. 244 §14 only requires publication notice "in a newspaper, if any, published in the town where the land lies or in a newspaper with general circulation in the town where the land lies." Defendants published notice of the

of bidders attended the auction and several rounds of bidding took place. Advertising and direct communication with the mortgagor provides notice well beyond a public proclamation. The undisputed facts show Chase cannot meet its burden of showing notice was so lacking as to make the sale commercially unreasonable; the Defendants clearly acted in good faith to protect the interests of the mortgagor. The Defendants' motion for summary judgment on Count X is, therefore, granted.

Branch's Claims Against the Defendants (Counts I-VII)

1.  The Note Sale

Branch claims the Defendants breached a contract to sell the Note to Branch (Count I) and breached the covenant of good faith and fair dealing (Count II).

a.  Breach of Contract

To prove a claim for breach of contract, a plaintiff must show a valid contract existed and that the defendant breached its duties under the contract. *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997).  In this case, there was no valid contract. Branch negotiated with the Defendants to sell the Note for several months. These negotiations culminated in a draft agreement which the Defendants sent to Branch on August 7, 2012.  The Defendants instructed Branch by email on August 9, 2012 that the draft agreement needed to be signed "this week if the Loan Sale is to happen." The Defendants did not receive any signatures that week, and never signed any agreement themselves.

Without these signatures, no valid contract existed. "[W]hen parties contemplate the execution of a final written agreement,' a strong inference is made that they 'do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'" *Mass. Cash*

---

ultimate sale in the local newspaper (the *Worcester Telegram & Gazette)* as well as in the *Boston Herald*, *Boston Globe*, *Wall Street Journal*, and *Banker & Tradesman*, and also posted the notice on several websites.

*Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404,415 (D. Mass. 1995) (quoting *Rosenfield v. U.S. Trust Co.*, 290 Mass 210, 216 (1935)).  Here, after extensive negotiations, a draft agreement was circulated, but a final agreement, signed by both parties, never came into being. In such a situation, "the parties generally are not bound until the contract is signed." *Blake v. Professional Coin Grading Service*, 898 F.Supp.2d 365, 388 (D. Mass. 2012) (quoting *Novel Iron Works, Inc. v. Wexler Construction Co.*, 26 Mass.App.Ct. 401, 407-408 (1988)).

Moreover, the agreement is not enforceable under the statute of frauds for the sale of personal property which states that "a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties…and is signed by the party against whom enforcement is sought or by his authorized agent." M.G.L. ch. 106, §1-206(1).  The Defendants never signed a contract, so there is no valid contract to sell the Note.  Branch argues the contract should be enforceable despite the statute of frauds because of the doctrine of part performance. Part performance can prevent a defendant from asserting the statute of frauds, but that doctrine does not apply in this case.  *Glass v. Hulbert*, 102 Mass. 24, 35-36 (1869).

Branch argues it partially performed on the Note Sale agreement by ceasing to bid at the foreclosure sale. This argument has no merit. Branch's claim it stopped bidding at the auction to give the Defendant more time to get the signatures for the Note Sale agreement is wholly unsupported by the evidence on the record. Branch designates the alleged agreement at the auction a second contract in its complaint and produces no evidence showing any auction agreement is related to the Note Sale or signatures.

Moreover, by the time of the auction it was clear no binding contract existed. First, Branch admits in its Response to the Defendants' Statement of Undisputed Facts that C-III informed Branch that the Note Sale agreement was terminated on August 28, 2012. Any actions Branch took on September 7, 2012, then, could not constitute part performance of an agreement that Branch knew was terminated. Second, the condition precedent stated in the agreement never came to pass. The agreement states "the approval by Noteholder's [C]redit [C]ommittee . . . of the terms of this Agreement on or before August 24, 2012. . . shall be a condition precedent to the performance of Noteholder's obligations under this Agreement." Branch did not deny in its Response to Defendants' Statement of Undisputed Facts that this condition precedent never occurred. By September 7, 2012 it was clear there was no enforceable contract for the Note Sale and therefore there could be no partial performance.

The record shows no contract existed to be breached, thus the Defendants' motion for summary judgment on Count I is granted.

b.  Breach of the Covenant of Good Faith and Fair Dealing

Without a contract, there is no covenant of good faith and fair dealing. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("the implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached"); *Boyle v. Douglas Dynamics, LLC*, 292 F. Supp. 2d 198, 209-10 (D. Mass. 2003) ("In order to establish a breach of the covenant of good faith and fair dealing, a plaintiff must prove that there existed an enforceable contract between the parties"). As previously discussed, the Defendants did not enter into a contract for the Note Sale, so no covenant of good faith and fair dealing ever existed to be breached. Therefore, Defendants' motion for summary judgment on Count II is granted.

2.  <u>Assignment of the Auction Bid</u>

Branch claims the Defendants breached a contract to assign the Defendants' successful

auction bid to Branch (Count III).  Here again, there can be no breach of contract, because the

record shows no valid contract existed.  *Guckenberger*, 957 F. Supp. at 316.  Contracts for the

sale of land must be in writing and signed by the party to be charged to be enforceable under the

statute of frauds.  Mass. Gen. Laws ch. 259, § 1 ("[N]o action shall be brought: . . . [u]pon a

contract for the sale of lands . . . or of any interest in or concerning them[,] [u]nless the promise,

contract or agreement upon which such action is brought, or some memorandum or note thereof,

is in writing and signed by the party to be charged therewith or by some person thereunto by him

lawfully authorizes").  The successful bid at a foreclosure sale is an interest in the property, and

thus falls under this statute.  *Watkins v. Briggs*, 314 Mass. 282, 284 (1943) (holding the purchase

of real estate at an auction sale is within the statute of frauds).  There is no evidence of any

written or signed agreement regarding the assignment of the bid, so no valid contract arose from

any oral agreement that may have taken place.

Branch again argues the statute of frauds should not apply to this contract because Branch

partially performed by ceasing to bid.  *See Glass*, 102 Mass. at 35-36.  Even if Branch did cease

bidding as part of an oral agreement, that action is not sufficient part performance to bring this

contract for the sale of land out of the statute of frauds.  *See Gordon v. Anderson*, 348 Mass. 787,

787 (1965) (part performance of oral agreement for sale of land occurred where plaintiff gave

down payment, took possession, made substantial improvements, and sold prior residence);

*Fisher v. MacDonald*, 332 Mass. 727, 729 (1955) (part performance of oral agreement for sale of

land occurred where plaintiff furnished part of consideration and took possession); *Andrews v.*

*Charon*, 289 Mass. 1, 5-7 (1935) (holding "payment alone is not sufficient part performance to

take a case out of the statute," nor is "mere change of possession"); *Derby v. Derby*, 248 Mass. 310, 314 (1924) ("an oral agreement to convey land may be specifically enforced in equity, notwithstanding the statute of frauds, where the agreement has been partly performed by the party seeking to enforce it, by taking possession and making improvements upon the estate"). Branch performed none of the three acts that Massachusetts courts have consistently required for a land sale contract to be taken out of the statute of frauds due to part performance; it did not pay any part of the purchase price, occupy the property, or make improvements to the property. *See Gordon*, 348 Mass. at 787; *Andrews*, 289 Mass. at 5-7. Even if ceasing to bid can be considered part of the purchase price, this alone would not be enough to constitute part performance of a land sale contract. *Andrews*, 289 Mass. at 5. Therefore the statute of frauds is not satisfied and no enforceable contract exists as a matter of law. Without a valid contract there can be no breach, thus the Defendants' motion for summary judgment on Count III is granted.

   3.  Fraud in the Inducement

        Branch alleges there was fraud in the inducement with both the Note Sale agreement (Count IV) and the agreement to assign the bid (Count V). The elements of fraud in the inducement are "(1) that the statement was knowingly false; (2) that [the Defendants] made the false statement with the intent to deceive; (3) that the statement was material to the plaintiffs' decision to sign the contract; (4) that the plaintiffs reasonably relied on the statement; and (5) that the plaintiffs were injured as a result of their reliance." *Zyla v. Wadsworth, Div. of Thomson Corp.* 360 F.3d 243, 254 (1st Cir. 2004); *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 225 (1st Cir. 2003); *Turner v. Johnson & Johnson*, 809 F.2d 90, 95 (1st. Cir. 1986). Branch produces no evidence to show there are facts which might satisfy the first two elements: (1) that the Defendants made any knowingly false statements or (2) that the Defendants made

false statements with intent to deceive. *Id*. Nothing in the record indicates the Defendants knowingly made false statements in either the negotiations for the Note Sale or the alleged agreement to assign the bid or had any purpose to deceive the Plaintiffs. At best, Moreover, Branch cannot satisfy the third element regarding the decision to sign the contract because, as previously discussed, no valid contract ever arose between Branch and the Defendants regarding this property. As there is no evidence on the record to create any factual basis for the fraud in the inducement allegations, the Defendants' motion for summary judgment on Counts IV and V is granted.

    4.  <u>Violations of M.G.L. c. 93A</u>

       Branch claims that by their conduct regarding the alleged agreements to sell the Note and assign the successful bid, the Defendants' violated M.G.L. c. 93A (Counts VI and VIII). M.G.L. c. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," but does not define "unfair" or "deceptive." M.G.L. c. 93A §2(a). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact…the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (Mass.2008). When, as here, a business is seeking relief under c. 93A, it will be "held to a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." *Giuffrida v. High Country Investor, Inc.*, 73 Mass. App.Ct. 225, 238 (2008); *see also Zurich American Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d. 240, 244 (D. Mass. 2011) ("In the context of disputes among businesses, where both parties are sophisticated commercial players, the 'objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of

the world of commerce.") (quoting *Vision Graphics v. E.I. Dupont De Nemours*, 41 F.Supp.2d 93, 101 (D.Mass.1999)).

"It is well settled that 'the mere breach of a contract, without more, does not amount to a [c.] 93A violation.'" *Zurich American Ins. Co.,* 796 F. Supp. 2d. at 244 (quoting *Madan v. Royal Indemnity Co.*, 26 Mass.App.Ct. 756, 762 (1989)).  Without a showing of any ulterior motive or a coercive or extortionate objective, a c. 93A claim based on breach of contract will fail.  *Id*. Courts have held that "a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a [c.] 93A claim is made."  *Id*. at 244-245 (quoting *Duclersaint v. Fed. Nat'l Mortg. Ass'n*, 427 Mass. 809, 814 (1998)).

Branch bases its c. 93A claim on the same conduct alleged in its other claims: that the Defendants misled Branch into entering agreements and then failed to perform under the agreements.  When summary judgment is granted on underlying contract and tort claims, and there are "no unique arguments relating to [the] [c.] 93A claim," summary judgment should be granted on the c. 93A claims as well.  *Egan v. Athol Mem. Hosp.*, 971 F.Supp. 37, 46-47 (D.Mass.1997).  The record does not support the underlying breach of contract and fraud in the inducement claims.  Moreover, Branch puts forth no unique arguments regarding the c. 93A claim or additional evidence showing any "ulterior motive or a coercive or extortionate objective." *Zurich American Ins. Co.*, 796 F. Supp. 2d. at 244.  There is simply nothing on the record suggesting the Defendants failed to perform any alleged contractual obligations due to unfair or deceptive acts or practices. M.G.L. c. 93A, §2(a).  Especially in the context of dealings between two businesses, no facts in this case come within "the boundaries of what may qualify for consideration as a c. 93A violation" as a matter of law.  *Milliken & Co.*, 451 Mass. at 563. Therefore, the Defendants' motion for summary judgment on Counts VI and VII is granted.

## Conclusion

Defendants U.S. Bank National Association and C-III Asset Management, LLC's Motion for Summary Judgment (Docket No. 11) is ***granted*** in its entirety as provided in this Memorandum of Decision.

*/s/ Timothy S. Hillman*___
TIMOTHY S. HILLMAN
DISTRICT JUDGE